UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BUNNETT & COMPANY, INC., et al.,

Plaintiffs,

v.

TODD GEARHEART, et al.,

Defendants.

Case No. 17-cv-01475-RS

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS THE SECOND AMENDED
COMPLAINT**

## INTRODUCTION

Plaintiffs Bunnett & Company, Inc. ("Bunnett & Co.") and Energy Feeds International, LLC ("Energy Feeds") are sister companies and distributors of nutritional supplements for dairy cows. Plaintiffs historically operated under agreements with major suppliers for exclusive distribution rights within the United States. They allege that an enterprise consisting of J.D. Heiskell Holdings, LLC ("JDH"), historically one of Plaintiffs' largest customers; Todd Gearheart, JDH's Vice President; Ray Gearheart, Todd Gearheart's father and Plaintiffs' former sales representative; Gearheart Ag Consulting, Inc. ("Gearheart Ag"), a company affiliated with Ray Gearheart; E&K Ag, LLC ("E&K"), a company affiliated with both Gearhearts; and Frank Dores, Plaintiffs' former General Manager (collectively, "Defendants"), together with Wawasan, one of Plaintiffs' suppliers in Malaysia; several Wawasan employees; and certain other affiliate companies (collectively, "co-conspirators"), devised a scheme to establish and exert control over a new distribution channel for the supply and sale of dairy cow nutritional supplements in the United States, effectively driving Plaintiffs out of business through wrongful conduct.

Plaintiffs originally brought suit against Defendants and their alleged co-conspirators, but pursuant to stipulation, dismissed their claims against the co-conspirators on July 24, 2017, and stipulated with Defendants on July 28, 2017, to file a Second Amended Complaint ("SAC"). The

SAC, filed on August 11, 2017, brings suit alleging twenty claims for relief under federal and state laws. Defendants JDH, the Gearhearts, and the Gearhearts' affiliated companies moved to dismiss all claims against them; Defendant Dores joins their motion. For the reasons stated below, the Motion to Dismiss the Second Amended Complaint is granted in part and denied in part.

**BACKGROUND**[1]

Plaintiffs Bunnett & Co. and Energy Feeds are two affiliated, family-owned businesses founded and led by William Bunnett. SAC ¶ 25. Their business is the distribution of nutritional supplements for dairy cows across the United States. *Id.* Plaintiffs historically operated under exclusive distribution agreements with major suppliers: Bunnet & Co. with Natural Soda, LLC ("Natural Soda"), and Energy Feeds with Wawasan. *Id.* ¶ 26. Frank Dores was Plaintiffs' General Manager until his resignation in October of 2015. *Id.* ¶ 28. Ray Gearheart was a sales agent for Plaintiffs until his resignation in October of 2015. *Id.*

JDH is a large animal feed distributor and agricultural trading company, where Todd Gearheart is a Vice President, and his father, Ray Gearheart is a "semi-retired" Vice President. SAC ¶ 28. JDH was one of Plaintiffs' largest customers by volume. *Id.* ¶ 27.

Plaintiffs allege that JDH, Dores, the Gearhearts, and the Gearhearts' affiliated companies Gearheart Ag and E&K created a scheme to establish and exert control over a new distribution channel for the supply and sale of dairy cow nutritional supplements and edge Plaintiffs out of business in the Fall of 2015. Defendants worked with certain Wawasan affiliates in order to do so through a number of illegal activities. In order to conceal their illicit activity, Natural Soda, Wawasan, JDH, and Todd Gearheart agreed to compensate Dores and Ray Gearheart through surreptitious payments to other companies or persons rather than to Dores and Ray Gearheart directly. In order to conceal Dores' actions from Plaintiffs before his resignation, Dores claimed he suffered from debilitating stress and could not work, and fraudulently applied for and received disability from the State of California. He later filed for bankruptcy, claiming his disability

---

[1] The facts as averred in the SAC are assumed true for purposes of this motion to dismiss.

ORDER REGARDING MOTION TO DISMISS
CASE No. 17-cv-01475-RS

prevented him from gainful employment, all the while working for and being compensated by JDH. Plaintiffs now bring suit alleging twenty claims for relief against various defendants.

## LEGAL STANDARD

Under Federal Rule of Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.      Sufficiency of Plaintiffs' RICO Claim**

Defendants first argue that Plaintiffs' RICO claims fail as a matter of law because Plaintiffs do not sufficiently plead the required elements of a RICO claim.  Plaintiffs bring claims for violations of both 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).  Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Section 1962(d) prohibits conspiracy to violate Section 1962(c).  In order to state a claim under Section 1962(c), Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Relatedly, in order to state a claim under Section 1962(d), "Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses."  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  Defendants argue that Plaintiffs fail to meet a number of the above elements to establish either RICO claim.

**A.  Plaintiffs' Allegations in Support of the "Enterprise" Element of a Civil RICO Claim**

Defendants argue that Plaintiffs fail to allege an "enterprise" separate from a pattern of racketeering activity as required by Section 1962(c).  An "enterprise" is statutorily defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  For purposes of a Section 1962(c) claim, an enterprise is "an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  In order to establish an enterprise, "a plaintiff must provide both evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit."  *Turkette*, 452 U.S. at 583.  The Ninth Circuit has expressly rejected that a plaintiff need show or allege "any particular organizational structure,

separate or otherwise." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007). The Supreme Court has clarified that an enterprise must be "separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. "While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other." *Id.* Thus, at the pleadings stage, Plaintiffs need to allege (1) a common purpose among defendants, (2) ongoing organization, formal or informal, and (3) a continuing unit. *See Odom*, 486 F.3d at 552–53.

Plaintiffs' allegations are sufficient to establish the "enterprise" element. In the SAC, Plaintiffs allege that Defendants, along with the alleged coconspirators, formed an entity "for the common purpose of creating and carrying out a distribution channel for the sale of specialty feed fat and other nutritional supplements within the United States, in part by importing specialty feed fat from Malaysia." SAC ¶ 142. This is a sufficiently pled "common purpose." Plaintiffs further allege that the leaders of the enterprise are JDH, the Gearhearts, Gearheart Ag, Dores, Wawasan, and certain Wawasan affiliates. These leaders "work together in making decisions with respect to distribution of inert fats within the United States market and direct the activities of the individual members of the enterprise and the enterprise itself." *Id.* E&K "is a current member and associate" of the enterprise and "indirectly manages the affairs of the enterprise." *Id.* This description of the alleged enterprise's leaders and members and their roles constitutes sufficiently pled "ongoing organization." Finally, Plaintiffs allege that Defendants' established and continue to maintain the alternative distribution channel, facilitated through various criminal activities taking place over the course of at least 18 months. These allegations are sufficient to establish that Defendants functioned as a continuing unit whose activities were ongoing rather than isolated. *See Odom*, 486 F.3d at 553.

### B. Plaintiffs' Alleged "Pattern" of Racketeering Activity

Defendants next contend that Plaintiffs fail to plead a "pattern" of racketeering activity. This element requires Plaintiffs to "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

220, 239 (1989). The Supreme Court has explained that "'[c]ontinuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Plaintiffs may demonstrate closed continuity "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242. "In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.*

Defendants also contend that Plaintiffs must show each defendant's separate involvement in the commission of two predicate acts in order to establish a pattern. *See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 113 F. Supp. 2d 345, 367 (E.D.N.Y. 2000) (denying summary judgment where "it cannot be concluded on a motion for summary judgment that [defendant] did not 'participate' or was not 'involved'" in alleged pattern of racketeering activity given defendant's "apparent active direction of [another's] fraudulent conduct"). While they are correct, it is also true, as Plaintiffs argue, that they may meet their burden by showing "involve[ment], direct[] or indirect[]," or "that [the] defendant bears responsibility" for an alleged offense. *Id.* at 368.

As another judge in this district has observed, "[c]ase law suggests that the burden on plaintiffs to plead the 'pattern' element is relatively low." *Slack v. Int'l Union of Operating Eng'rs*, No. C-13-5001 EMC, 2014 WL 4090383, at *24 (N.D. Cal. Aug. 19, 2014) (citing cases). "Thus, at the pleading stage, if the threat of continuing racketeering activity is inferable from the complaint, then whether defendants' actions are continuing in nature or isolated or sporadic will be the subject of proof at trial.'" *Id.* (internal quotation marks and alterations omitted); *see also Uthe Tech. Corp. v. Allen*, No. C 95-02377 WHA, 2016 WL 1427557, at *2–3 (N.D. Cal. Apr. 12, 2016) (denying summary judgment where defendants argued the record demonstrated the alleged conspiracy had only a solitary goal but "plaintiff offered evidence that, at least at its inception, the alleged conspiracy intended to siphon off sales from [plaintiff] indefinitely into the future").

Given the current stage of proceedings, Plaintiffs' allegations are sufficient to plead both closed and open-ended continuity. With respect to closed continuity, Plaintiffs plead several

United States District Court
Northern District of California

predicate acts, such as wire fraud, money laundering, and perjury, each relating to the same alleged scheme of interfering with Plaintiffs' business, and extending over a period of at least eighteen months. While Defendants argue that the allegations pertaining to Todd Gearheart took place only between January and March of 2016, they are incorrect. The SAC alleges that Todd Gearheart also participated in a predicate act in July of 2017. Plaintiffs further plead that Defendants and their co-conspirators "will continue to commit unlawful acts in the ordinary course of its business," including "provid[ing] false testimony and commit[ing] perjury" in an effort to protect their business interests. *Id.* ¶ 168. These allegations constitute an ongoing threat sufficient to allege open-ended continuity. As Plaintiffs have sufficiently pled continuity, as well as related predicate acts, they have fulfilled their pleading burden to allege a "pattern" of racketeering activity within the meaning of Section 1962(c).

### C. Plaintiffs' Alleged Predicate Acts

Defendants argue that Plaintiffs fail properly to plead any predicate acts that could support RICO liability, either because Plaintiffs fail to state a claim, or because Plaintiffs' predicate acts do not qualify as racketeering activity within the meaning of the RICO statute. While not all of Plaintiffs' predicate acts are well pled, Plaintiffs successfully plead at least two predicate acts supporting RICO liability against each defendant.

### 1. Wire and Mail Fraud

Defendants contend that Plaintiffs' wire and mail fraud predicate acts are insufficient for failure to plead that Plaintiffs were deceived, deprived of property, or relied on alleged false statements. Mail and wire fraud consist of using the mail or wires in "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. §§ 1341, 1343; *see also United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003) ("The elements of mail and wire fraud are: (1) proof of a scheme or artifice to defraud, and (2) using or causing the use of the mails or wires in order to further the fraudulent scheme."). Contrary to Defendants' argument, there is no requirement that Plaintiffs plead that they were deceived. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006)

(discussing for purposes of proximate cause analysis and not elements of mail and wire fraud whether plaintiff showed injury). Nor need Plaintiffs plead that they were deprived of property. Defendants cite *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 406 (9th Cir. 1991), for that proposition, but that case dealt with conduct occurring prior to the passage of 18 U.S.C. § 1346, in which Congress specifically brought "a scheme or artifice to deprive another of the intangible right of honest services" within the wire and mail fraud statutes' purview. *See also Skilling v. United States*, 561 U.S. 358, 407–08 (2010) (construing Section 1346 to criminalize "honest-services cases involv[ing] offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes"). Defendants' argument regarding reliance similarly fails. The Supreme Court very clearly stated in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008), "that a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." For these reasons, Plaintiffs' wire and mail fraud predicate acts are not insufficient as a matter of law.

**2. Subornation of Perjury, Perjury, and Obstruction of Justice**

Defendants next assert that the predicate acts of perjury and subornation of perjury do not qualify as "racketeering activity" for purposes of the RICO statute. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" and enumerating specific acts that qualify, not including perjury). Obstruction of justice, however, in violation of 18 U.S.C. § 1503, is one of the enumerated acts that qualifies as racketeering activity, and acts of perjury committed in federal courts are properly indictable under that section. *See Streck v. Peters*, 855 F. Supp. 1156, 1162 (D. Haw. 1994) (citing *United States v. Mayer*, 775 F. 2d 1387, 1391 (9th Cir. 1985)); *accord Hornung v. Madarang*, 2006 WL 3190671, at *8 (N.D. Cal. Nov. 2, 2006) (stating that perjury in state court proceedings only does not qualify as a RICO predicate act). Because Plaintiffs' allegations clearly relate to federal court proceedings, these allegations may constitute predicate acts.

**3. Commercial Bribery**

Defendants challenge Plaintiffs' commercial bribery allegations on the grounds that at the

time Dores was paid, he was no longer an employee of Plaintiffs.  *See* Cal. Penal Code § 641.3 (proscribing an "employee" from "solicit[ing], accept[ing], or agree[ing] to accept money or anything of value from a person other than his or her employer, other than in trust for the employer, corruptly and without the knowledge or consent of the employer, in return for using or agreeing to use his or her position for the benefit of that other person," or "any person" from "offer[ing] or giv[ing] an employee money or anything of value under those circumstances").  The SAC states, however, that "[o]n information and belief, Wawasan caused Paros to begin making payments to Dores while he was still employed with the Bunnett Parties in order to cause Dores to place product purchases that harmed Energy Feeds and inured to the benefit of Wawasan."  SAC ¶ 158.  While defendants JDH, the Gearhearts, and the Gearhearts' affiliated companies argue that these allegations do not pertain specifically to them, there is no requirement that Plaintiffs allege direct involvement in each predicate act by each defendant so long as each defendant is involved in at least two predicate acts.

Plaintiffs also argue in opposition that they allege that JDH bribed Ray Gearheart in violation of California Penal Code § 641.3.  This act is not pled in the RICO predicate acts section of Plaintiffs' SAC, but rather in a separate count for violation of the Robinson-Patman Act.  To the extent that Plaintiffs wish to include this conduct within their predicate acts for purposes of their RICO claim, they must amend their complaint in order to do so, taking into consideration the discussion of that cause of action below.

### 4.  Violations of the Travel Act

Defendants contend that Plaintiffs may not base their Travel Act claims on mail or wire fraud, because it is not "unlawful activity" as defined by the Act.  Plaintiffs, however, contend that their Travel Act claims are based on commercial bribery carried out by the U.S. mail system.  Section 1952 prohibits travel in interstate commerce in connection with certain enumerated unlawful activities, including "bribery . . . in violation of the laws of the State in which committed or of the United States."  18 U.S.C. § 1952(b).  Because the Travel Act claims rise and fall with the commercial bribery claims, this act may survive insofar as it is based on the predicate act of

### 5. Concealment of Assets and Bankruptcy Fraud

Defendants JDH, the Gearhearts, and the Gearhearts' affiliated companies argue that Plaintiffs' bankruptcy fraud claims fail with respect to them because Plaintiffs do not allege that any of those defendants knew that Dores intended to conceal the payments from a bankruptcy trustee. Plaintiffs, however, adequately allege that they "provided knowing and substantial assistance to Frank Dores in connection with the secret payments made to him . . . and the concealment of those payments from the bankruptcy court." SAC ¶ 160. Plaintiffs further allege that "[t]he Gearheart Distribution Channel knew that the Dores were in bankruptcy, it knew that the payments were unlawful, and it designed the transaction to conceal the nature, location, source, ownership, and control of the proceeds and to avoid reporting the payments to the bankruptcy court." *Id.* ¶ 161. While Defendants JDH, the Gearhearts, and the Gearhearts' affiliated companies point to an email attached to the SAC which they claim shows that Ray and Todd Gearheart discussed transferring money to Dores for nearly two weeks before they learned of his bankruptcy, that email is inconclusive as to the Gearhearts' knowledge. *See* SAC Ex. 13 [Dkt. No. 63-14] at 14 ("Got a call from FD s cousin last night . F asked him to call and tell me that F filled [sic] chapter 13 last Friday ."). Nothing in that email forecloses the possibility that the Gearhearts already knew Dores planned to file bankruptcy at an earlier date, and were simply receiving confirmation from his cousin. Finally, Plaintiffs are correct that it is possible and consistent that Defendants' attempted to conceal their payments both from Plaintiffs and from the bankruptcy court.

### 6. Money Laundering

Defendants claim that Plaintiffs do not allege that the money involved in the money laundering predicate act were proceeds from unlawful activity, as required by 18 U.S.C. § 1956. Yet, Plaintiffs' aver that the Defendants conducted "financial transactions involving the proceeds from unlawful activity," including the alleged bankruptcy fraud and commercial bribery. SAC ¶ 162. These allegations are sufficient at this stage.

### 7. Violation of National Stolen Property Act

Defendants argue that the predicate act of violation of the National Stolen Property Act, 18 U.S.C. §§ 2314–15, fails because Plaintiffs do not allege that any property was in fact stolen. Plaintiffs do not respond to this argument in opposition. Reviewing the allegations in the SAC, Defendants are correct that Plaintiffs fail to allege the funds at issue were stolen, and other allegations make clear that they were voluntarily provided. For these reasons, Plaintiffs' predicate act for violation of the National Stolen Property Act fails.

### D. Plaintiffs' Allegations Regarding Defendants' Direction of the Affairs of the Enterprise

Defendants next move to dismiss Plaintiffs' RICO claims on the grounds that they did not direct the affairs of the alleged enterprise. The "conduct" element of Section 1962(c) demands that "one must have some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The Supreme Court has adopted the "operation or management" test, such that in order to meet the "conduct" element of Section 1962(c), "one must participate in the operation or management of the enterprise itself." *Id.* at 185. "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. An enterprise "also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery." *Id.* However, "[s]imply performing services for the enterprise does not rise to the level of direction." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).

Here, Plaintiffs aver that JDH, the Gearhearts, the Gearhearts affiliated companies, and Dores "succeeded in creating an alternative distribution channel." SAC ¶ 124. Non-defendant "Wawasan manufactured the product and shipped it primarily to either JDH or to [another company]." *Id.* Ray Gearheart and Dores "acted as sales representatives for the alternative distribution channel," and Todd Gearheart and JDH "acted as a distributor, selling product." *Id.* The SAC further alleges that JDH "is itself a bad actor and beneficiary of the" enterprise's wrongful conduct because it "employs Todd Gearheart and vests him with the authority to

perform" the unlawful conduct he committed in support of the alternate distribution channel.  *Id.* ¶ 143.

Defendants argue these allegations show that they only operated in a manner serving their own self or business interests, citing a Seventh Circuit case in support.  *See United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013).  In that case, an employee health benefit fund alleged that a pharmaceutical company and drug manufacturer engaged in a scheme to defraud insurers by filling prescriptions for generic drugs with more expensive dosages than prescribed in violation of RICO.  *Id.* at 850.  The court found that the complaint "d[id] not adequately allege that [defendants] were conducting the affairs of [the enterprise] as opposed to their own affairs," "to advance their individual self-interests."  *Id.* at 854.  It explained that "[t]he complaint d[id] not allege, for instance, that officials from either company involved themselves in the affairs of the other," among other things, but instead defendants' interactions "show[ed] only that the defendants had a commercial relationship."  *Id.* at 855.

Plaintiffs' averments in this case, however, do suggest coordinated activity and involvement in each other's affairs among Defendants beyond the typical commercial relationship.  Both Ray Gearheart and Dores are alleged to have reached an agreement with, and began working on behalf of, the enterprise prior to their resignations from Plaintiffs' employ, and they along with JDH and Todd Gearheart are alleged to have been instrumental in setting up the alternate distribution channel and convincing Wawasan to engage with it.  These averments, in combination with Plaintiffs' allegations regarding their roles in the enterprise described above, are sufficient at this stage to plead that each defendant participated in the operation of the enterprise such that they played some part in directing its affairs.

### E.  Plaintiffs' Allegations Regarding Proximate Cause

Defendants contend that Plaintiffs fail to plead their injuries were proximately caused by the alleged predicate acts.  "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate

cause as well." *Hemi Grp. LLC, v. City of New York*, 559 U.S. 1, 9 (2010). Proximate cause "requires some direct relation between the injury asserted and the injurious conduct alleged." *Id.*

In *Anza v. Ideal Steel*, 547 U.S. 451, 454 (2006), the Supreme Court considered a case in which the plaintiff company alleged that its competitor company and its owners were engaged in an unlawful racketeering scheme "aimed at gain[ing] sales and market share at [plaintiff's] expense" by failing to charge the requisite sales tax and by submitting fraudulent tax returns in an effort to conceal their conduct. The Court explained that plaintiff's RICO claim failed for lack of proximate causation. *Id.* at 457–58. Because the RICO violation alleged involved "a pattern of mail fraud and wire fraud," [t]he direct victim of this conduct was the State of New York, not [plaintiff]." *Id.* at 458. While the Court acknowledged the plaintiff's lost sales, it explained that those "lost sales could have resulted from factors other than petitioners' alleged acts of fraud." *Id.* at 459.

Defendants assert that here, Plaintiffs' alleged injuries are too attenuated from the predicate acts to establish proximate cause. Defendants argue, for example, that "the alleged fraudulent manner in which payments were made to Frank Dores after Dores resigned from Plaintiffs' employ and after Wawasan and Natural Soda terminated their agreements necessarily has nothing to do with Plaintiffs' claimed harm, which arises from supposed 'lost customers' and 'business opportunities' that flowed from the termination of the supplier and employee relationships." Mot. at 14. While Defendants argue the victim of the fraud perpetrated is in fact the bankruptcy court and not Plaintiffs, Plaintiffs respond that they were forced to expend attorneys' fees in Dores' bankruptcy case as a direct result of Defendants' concealment and fraudulent bankruptcy. *See C&M Cafe v. Kinetic Farm, Inc.*, No. 16-cv-04342-WHO, 2016 WL 6822071, at *8 (N.D. Cal. Nov. 18, 2016) ("[Plaintiff] has adequately pleaded that it was injured in that it sustained legal costs as a direct result of defendants' racketeering activities."). Plaintiffs' legal costs are an economic injury sustained as a direct result of the alleged bankruptcy fraud and concealment of assets. Defendants also ignore Plaintiffs' allegations of commercial bribery, and that Dores was bribed "to place product purchases that harmed Energy Feeds and inured to the

benefit of Wawasan" while employed by Plaintiffs.  SAC ¶ 158.  This direct relationship between the predicate act of bribery and Plaintiffs' loss of business also sufficiently constitutes proximate cause at this stage.

### F.  Plaintiffs' RICO Conspiracy Claim

Defendants move to dismiss Plaintiffs' RICO conspiracy claim under Section 1962(d) on the grounds that Plaintiffs fail to state a claim under Section 1962(c).  Because Plaintiffs' allegations with respect to their 1962(c) claim survive, so too does their Section 1962(d) claim.

## II.  Vicarious Liability of JDH

Defendants also argue that that JDH cannot be held vicariously liable for the actions of Todd Gearheart.[2]  The Ninth Circuit allows a corporation benefited by its employee's violations of Section 1962(c) to be held liable under the doctrine of respondeat superior.  *See Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992).  "In general, an employer will be vicariously liable based on the doctrine of respondeat superior if its employee's acts were committed within the course and scope of her employment."  *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n.*, 298 F.3d 768, 775–76 (9th Cir. 2002) (citing Rest. 2d Agency § 219 (1958)).  Conduct is within the course and scope of employment if "(1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform."  *Id.* at 776.

While Defendants contend Plaintiffs do not plead that Todd Gearheart's conduct occurred within the time and space limits authorized by his employment, their argument regarding false checks and invoices does not speak to "time and space limits" but rather whether his acts were of the kind he was hired to perform.  Nonetheless, while Plaintiffs claim "Todd Gearheart used his

---

[2] Defendants separately argue that the RICO claims against JDH must be dismissed because Plaintiffs fail to plead that JDH individually participated in two predicate acts.  Because Plaintiffs concede JDH did not individually participate in two predicate acts, but rather their theory is that JDH is vicariously liable for Todd Gearheart's actions, JDH's participation in the racketeering scheme rises and falls with the question of vicarious liability and is not separately addressed.

J.D. Heiskell e-mail account and carried out plans in furtherance of the scheme from his J.D. Heiskell office during business hours," Opp. at 12, these allegations do not appear in the SAC. Because Plaintiffs may amend the SAC to include these allegations, however, the remaining two factors will be considered.

With respect to Todd Gearheart's motivations, Plaintiffs' averments include that Todd Gearheart had "a broader agreement" with JDH in which he "promised in essence that [he]'d take care of J.D. Heiskell and that J.D. Heiskell would in turn take care of the Gearhearts. The Gearhearts ensured that J.D. Heiskell had the most reliable supply at the best prices, protected it from competition, and informed it of competitor's margins." SAC ¶ 95. These allegations are sufficient to allege that he was motivated at least in part to serve JDH.

Whether Todd Gearheart's conduct was of a kind he was hired to perform, however, is a more difficult question. Plaintiffs allege that "Todd Gearheart's activities directly benefitted J.D. Heiskell and are the sort of activities—establishing a business relationship with a supplier, negotiating specific transaction terms, authorizing purchases, and thereby creating and/or maintaining a distribution network—for which J.D. Heiskell employs Todd Gearheart and vests him with the authority to perform." SAC ¶ 143. These activities, however, are not illegal acts, nor do they make up the predicate acts alleged in Plaintiffs' RICO claim. Instead, Todd Gearheart is alleged to have been involved in the predicate acts of mail and wire fraud, bankruptcy fraud, money laundering, and perjury. Unlike in *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 177 F. Supp. 3d 1183, 1192 (N.D. Cal. 2016), Todd Gearheart did not "allegedly violate RICO by fulfilling [his] actual job responsibilities." *See also Oki*, 298 F.3d at 777 ("[C]onspiring to violate RICO was outside the course and scope of [the employee's] employment because it was not the kind of function [the company] hired her to perform."). Thus, with respect to Plaintiffs' RICO claims only, JDH may not be held vicariously liable for Todd Gearheart's actions.

Plaintiffs may still proceed, however, on their theory of vicarious liability for those claims for relief in which Todd Gearheart was acting within the scope of his employment. For example, Plaintiffs allege that JDH and the Gearhearts are alleged to have "encouraged and aided Frank

Dores' breach of fiduciary duty," and JDH and Todd Gearheart "induced and participated in Ray Gearheart's breach of fiduciary duty." *Id.* ¶¶ 90, 92. Because establishing business relationships were within the scope of Todd Gearheart's duties, Plaintiffs' theory of vicarious liability of JDH is sufficiently alleged for those claims for relief.

### III. Violation of 15 U.S.C. § 13(c)

Plaintiffs bring two claims for relief under the Robinson-Patman Act, 15 U.S.C. § 13(c), one against Frank Dores, and a separate one against JDH and the Gearhearts. JDH and the Gearhearts alone move to dismiss the Robinson-Patman Act claim against them for failure to state a claim and for lack of standing. The Robinson-Patman Act, enacted as a complement to the federal antitrust laws, "proscribes price discrimination [] to the extent that it threatens to injure competition." *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006) (internal quotation marks omitted). Section 2(c) states:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods . . . .

15 U.S.C. § 13(c). This section "encompasses cases of commercial bribery tending to undermine the fiduciary relationship between a buyer and its agent, representative, or other intermediary in a transaction involving the sale or purchase of goods." *Harris v. Duty Free Shoppers Ltd. P'ship*, 940 F.2d 1272, 1274 (9th Cir. 1991).

In support of their Robinson-Patman Act claim, Plaintiffs allege that "Todd Gearheart on behalf of J.D. Heiskell promised Ray Gearheart that J.D. Heiskell would continue to purchase product from Ray Gearheart even after he resigned from the Bunnett Parties' employ." SAC ¶ 190. They further allege that this action "ensured that Ray Gearheart would not be cut out of the distribution chain and that he would continue to receive commissions for J.D. Heiskell's purchases of Wawasan product." *Id.* ¶ 190. As a result of this promise, JDH and the Gearhearts "caused Energy Feeds to sell product [to JDH] at a reduced price that others were paying thereby resulting in competitive injury." *Id.* ¶ 193.

These allegations are insufficient to constitute a Robinson-Patman Act claim. First,

United States District Court
Northern District of California

Plaintiffs allegations are entirely lacking in any detail that would render them plausible, such as when and where the alleged promises were made, or the monetary value of those promises and the injury to Plaintiffs.  While Plaintiffs are correct that a promise of future financial gain can constitute a bribe, they fail to plead that Ray Gearheart received or accepted anything of value "except for services rendered in connection with the sale or purchase of goods."  15 U.S.C. § 13(c).  Plaintiffs allege only that Ray Gearheart was promised future business with JDH in return for his services rendered, not anything else of value, such as an additional commission or kickback on top of his normal compensation for services rendered.  The law does not prohibit developing business relationships with each other absent some additional payment on top of the business transaction.

Finally, Plaintiffs fail to allege that they were injured as a result of this activity.  That Plaintiffs sold a product at "a reduced price" does not necessarily translate to injury.  While Plaintiffs allege their "pricing decisions were made on false information," SAC ¶ 193, they do not plead with specificity what the false information was, any reliance on it, or the difference in price. Nor do Plaintiffs allege how their sale of a single product at a reduced price threatened to injure competition more generally.  For these reasons, Plaintiffs' Robinson-Patman Act claim against JDH and the Gearhearts is dismissed.

## IV.  Breach of Fiduciary Duty Claims

### A.  Aiding and Abetting Breach of Fiduciary Duty by Frank Dores

Defendants JDH, the Gearhearts, and the Gearhearts' affiliated companies move to dismiss the claim for aiding and abetting breach of fiduciary duty by Dores on the grounds that Plaintiffs fail to state a claim.  Under California law, to state a claim for aiding and abetting in breach of fiduciary duty, Plaintiffs must allege that the defendants "(1) had actual knowledge of the specific primary wrong being committed by the fiduciary; and (2) provided substantial assistance to the fiduciary to accomplish the specific breach of fiduciary duty."  *In re Mortg. Fund*, 527 B.R. 351, 361 (N.D. Cal. Mar. 23, 2015).

While the briefing is muddled on this cause of action, Defendants appear to argue both that

the SAC fails to allege Dores breached any fiduciary duty to Plaintiffs, as well as fails to allege Defendants provided substantial assistance to Dores in accomplishing any underlying breach. Defendants' arguments with respect to the underlying breach fail.[3]  Under California law, "an employee, while employed, owes undivided loyalty to his employer."  *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007).  The SAC is replete with various allegations that Dores worked to promote his own and others' business interests while in Plaintiffs' employ, which are sufficient to allege a breach of Dores' fiduciary duty of loyalty to Plaintiffs.

Regarding Defendants' substantial assistance, Plaintiffs allege that "J.D. Heiskell, Dores, and the Gearhearts worked together to persuade Natural Soda to terminate the exclusive distribution agreement," including by "manufactur[ing] rumors of 'inner turmoil' with the Bunnet Parties."  SAC ¶ 41.  Defendants agreed to conceal their behavior, which Plaintiffs allege "was necessary to gain Frank Dores' assistance."  *Id.* ¶ 43.  They "organiz[ed] the mass resignation of the Former Representatives," including Ray Gearheart.  *Id.* ¶ 205.  At this stage of the proceedings, these allegations may constitute substantial assistance and Plaintiffs have thus stated a claim for aiding and abetting breach of fiduciary duty by Dores.

### B.  Breach of Fiduciary Duty by Ray Gearheart

Defendants move to dismiss Plaintiffs' claim for breach of fiduciary duty against Ray Gearheart for failure to state a claim.  In order to state a claim for breach of fiduciary duty under California law, Plaintiffs must allege "(1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach."  *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932 (2011).  Defendants only dispute that Ray Gearheart owed Plaintiffs a fiduciary duty.  Plaintiffs contend that as their agent, Ray Gearheart owed a corresponding fiduciary duty to them.

"An agency relationship is a fiduciary one, obliging the agent to act in the interest of the

---

[3] While several causes of action do sound in fraud, Plaintiffs' breach of fiduciary duty claim against Dores does not, and thus is not subject to Rule 9(b)'s heightened pleading standard.

principal." *Mendoza v. Rast Produce Co., Inc.*, 140 Cal. App. 4th 1395, 1405 (2006). "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Secci v. United Indep. Taxi Drivers, Inc.*, 8 Cal. App. 5th 846, 854 (2017) (internal quotation marks and citations omitted). "The chief characteristic of the agency is that of representation, the authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties." *Violette v. Shoup*, 16 Cal. App. 4th 611, 620 (1993); *see also Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1328 (1996) ("An agent is a person authorized by the principal to conduct one or more transactions with one or more third persons and to exercise a degree of discretion in effecting the purpose of the principal."). "The significant test of an agency relationship is the principal's right to control the activities of the agent." *Id.* "The existence of an agency is a factual question within the province of the trier of fact . . . . Only when the essential facts are not in conflict will an agency determination be made as a matter of law." *Secci*, 8 Cal. App. 5th at 854.

Here, Plaintiffs allege that Ray Gearheart was a sales agent who "agreed to represent exclusively the Bunnett Parties products and act as the Bunnett Parties' agent for negotiating terms for the sale of the Bunnett Parties' products." SAC ¶ 40. They further allege that "Ray Gearheart had agreed to be the Bunnett Parties' agent, representing the Bunnett Parties' products on an exclusive basis and providing the Bunnett Parties' market information and market intelligence, and Ray Gearheart was compensated accordingly. Ray Gearheart acted as the Bunnett Parties' agent in negotiating the terms of customers' orders, including price, date, and quantity." *Id.* ¶ 91. These responsibilities and actions fit plainly within the definition of an agent under California law, as Ray Gearheart negotiated sales contracts, including key terms, for Plaintiffs, and was therefore authorized by Plaintiffs to conduct transactions with third parties on their behalf. While Defendants are more or less correct that Plaintiffs allegations' do not speak towards their right to control Ray Gearheart's conduct, Plaintiffs have nonetheless sufficiently pled an agency relationship at this stage of the proceedings. Because Plaintiffs' allegations are sufficient to allege

an agency relationship, Plaintiffs' cause of action for breach of fiduciary duty by Ray Gearheart is adequately pled.

### C. Aiding and Abetting Breach of Fiduciary Duty by Ray Gearheart

Defendants also move to dismiss Plaintiffs' claim for aiding and abetting breach of fiduciary duty by Ray Gearheart against JDH, Todd Gearheart, E&K, and Dores on the grounds that Plaintiffs fail to state a claim for breach of fiduciary duty by Ray Gearheart. Because Plaintiffs have stated the underlying breach of fiduciary duty claim, however, their claim for aiding and abetting also survives.

### V. Tortious Interference Claims

Defendants move to dismiss all seven claims for intentional or negligent interference with contract or prospective economic relations. All of Plaintiffs' tortious interference claims require similar elements: (1) either a valid contract or an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the contract or relationship; (3) intentional acts on the part of the defendant designed to induce breach or disruption of the contract or relationship; (4) actual disruption of the contract or relationship; and (5) damages or economic harm to the plaintiff proximately caused by the acts of the defendant. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003); *The Kind and Compassionate v. City of Long Beach*, 2 Cal. App. 5th 116, 129 (2016); *N. Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 786 (1997).[4] Defendants argue that with respect to customer-related claims, Plaintiffs fail to state a claim because they do not plead any particular contractual or economic relationships with enough specificity to raise a claim. With respect to employee- and agent-related claims, Defendants argue that Plaintiffs fail to plead any contracts or other basis for asserting a prospective economic

---

[4] The tort for intentional interference with prospective economic relations carries the additional requirement of some independent wrongful act other than the fact of interference. *See Korea Supply Co.*, 29 Cal. 4th at 1153. The tort for negligent interference is similar to the intentional tort, although a plaintiff may also plead that the defendant knew or should have known of the relationship subject to interference. *See N. Am. Chem. Co.*, 59 Cal. App. at 786.

relationship with future benefit to Plaintiffs.

Plaintiffs' claims for tortious interference with respect to their customers in Counts Nine, Ten, and Eleven are indeed threadbare. Plaintiffs fail to allege specific contractual or economic relationships with individual customers, but instead refer only to customers generally. While Plaintiffs attempt to name customers in opposition, they must amend the SAC in order to survive dismissal. Plaintiffs' allegations with respect to interference with prospective economic relationships fail for the separate reason that Plaintiffs do not allege facts giving rise to the probability of future economic benefit, as well as the necessary independent wrongful act. These counts are dismissed with leave to amend.

Plaintiffs' claims with respect to employee Dores and sales agents Ray Gearheart and John Franklin are similarly lacking. Plaintiffs allege that these relationships "had the strong probability of future economic benefit," "Defendants undertook intentional wrongful acts designed to disrupt" and which "did in fact disrupt" those relationships, and that the sales agents each resigned. SAC ¶¶ 258, 260–62. Again, these allegations are too vague to state a claim. Plaintiffs provide no facts allowing a plausible inference that their relationships with Dores, Ray Gearheart, and Jon Franklin had a strong probability of future economic benefit, such as particular customer accounts they handled that were subsequently lost and the revenue they historically brought in as compared to after their departure. For these reasons, Counts 12 and 13 are also dismissed with leave to amend.

Counts 16 and 17 allege tortious interference with Plaintiffs' prospective economic relationship with Wawasan. Similar to their other allegations, they allege that "Energy Feeds enjoyed an economic relationship with Wawasan that was long-lasting and had a strong probability of future economic benefit to Energy Feeds," "Defendants undertook intentional wrongful acts designed to disrupt Energy Feeds' relationship with Wawasan" and "did in fact disrupt Energy Feeds' relationship with Wawasan," and as a result, the relationship "was damaged and took years to recover." SAC ¶¶ 296, 298–300. Again, Plaintiffs must allege facts supporting their assertion that they had a probability of future economic benefit. For these reasons, Counts 16 and 17 are dismissed with leave to amend.

## VI. Breach of Contract Claims

"The elements of a cause of action for inducing breach of contract are the existence of a valid contract, defendants' intent to induce a breach of the contract, and a breach resulting from defendants' unjustifiable or wrongful conduct." *Scott v. McDonnell Douglas Corp.*, 37 Cal. App. 3d 277, 292 (1974). Defendants move to dismiss Plaintiffs' causes of action for inducing breach of contract with Natural Soda and Wawasan on the grounds that Plaintiffs cannot establish causation. Plaintiffs do not respond to this argument in opposition. Nonetheless, Plaintiffs' causes of action survive. While there is support in the SAC for Defendants' argument that Natural Soda and Wawasan had independent reasons for wanting to terminate their agreements, Plaintiffs allege that it was Defendants' actions that made it possible for them to do so and that Defendants indeed induced that breach. Taking the allegations in the light most favorable to the Plaintiffs, they have sufficiently stated a claim for inducing breach of contract in Counts 14 and 15.

Defendants also move to dismiss Plaintiffs' breach of contract claim against JDH on the grounds that their allegations based "upon information and belief" are insufficient. Plaintiffs allege that JDH breached a confidentiality agreement with Energy Feeds by "disclosing Confidential Information, as defined in the Confidentiality Agreement, to third parties, including Wawasan and Wawasan's Gareth Cheong and Yap Wai Joon." SAC ¶ 317. They allege that "[o]n information and belief," JDH "further misused Confidential Information in its efforts to establish a competing distribution channel." *Id.* In their detailed factual allegations, however, Plaintiffs also allege that during discussions about a potential joint venture between JDH and Energy Feeds, William Bunnett provided JDH with "a number of documents showing actual results and projections of product volumes, growth by customer, EBITDA projections, and other detailed financial information," as well as "discussed the valuation of the business," subject to the confidentiality agreement. SAC ¶ 78; *see generally id.* ¶¶ 75–80. JDH then "used this confidential information to assist in competing with Energy Feeds and establishing an alternative distribution channel for inert fat products within the United States." *Id.* ¶ 80. These allegations are not simply rote recitation of the elements of a breach of contract claim based upon information

and belief, but rather contain the requisite details about JDH's alleged breach of the confidentiality agreement between it and Energy Feeds. For these reasons, Plaintiffs have sufficiently stated a breach of contract claim in Count 18.

## VII.    UCL Claim

Plaintiffs bring a claim for violation of the California UCL under its unlawfulness prong, based on their previous causes of actions alleging illegal activities. Defendants move to dismiss on the grounds that none of these predicate causes of actions survive, and thus the UCL claim cannot either. Because several of Plaintiffs' claims survive, however, they can serve as the requisite predicate violation of law under the UCL unlawfulness prong. Plaintiffs' Count 19 thus survives.

## VIII.    Civil Conspiracy Claim

Plaintiffs do not dispute that civil conspiracy is not a separate cause of action under California law. Count 20 is therefore dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint is granted in part and denied in part. Defendants' motion is granted with respect to Counts 4, 9, 10, 11, 12, 13, 16, 17, and 20. Defendant JDH alone is also dismissed from Counts 1 and 2. Counts 1, 2, 6, 7, 8, 14, 15, 18, and 19 may otherwise proceed. Because no party has moved with respect to Counts 3 and 5, they too may proceed. Plaintiffs are granted leave to amend consistent with this Order. Any amended complaint must be filed within 20 days of the date of this Order.

**IT IS SO ORDERED**.

Dated: 2/27/18

RICHARD SEEBORG
United States District Judge