UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUNNETT & COMPANY, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> TODD GEARHEART, et al., <br><br> Defendants. | Case No. 17-cv-01475-RS <br><br> **ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs Bunnett & Company, Inc. ("Bunnett & Co.") and Energy Feeds International, LLC ("Energy Feeds") are sister companies and distributors of nutritional supplements for dairy cows. They aver that an enterprise consisting of J.D. Heiskell Holdings, LLC ("JDH"), historically one of Plaintiffs' largest customers; Todd Gearheart, JDH's Vice President; and certain other defendants and co-conspirators devised a scheme to establish and exert control over a new distribution channel for the supply and sale of dairy cow nutritional supplements in the United States, effectively driving Plaintiffs out of business through wrongful conduct. JDH now moves to strike or dismiss certain counts in Plaintiffs' Third Amended Complaint ("TAC") on the grounds that Plaintiffs were not granted express leave to amend, nor can Plaintiffs plead vicarious liability on behalf of JDH as a matter of law. For the reasons stated below, JDH's motion to strike is denied, but the motion to dismiss is granted.

## BACKGROUND[1]

Previous orders have set forth the relevant facts and only those pertaining to the present motion are recounted here. Plaintiffs are two affiliated, family-owned businesses that distribute

---

[1] The facts as averred in the TAC are assumed true for purposes of this motion to dismiss.

nutritional supplements for dairy cows across the United States and have historically operated under exclusive distribution agreements with their suppliers. JDH is a large animal feed distributor and agricultural trading company where Todd Gearheart is a Vice President. JDH, Todd Gearheart, and other defendants created a scheme to establish and exert control over a new distribution channel and edge Plaintiffs out of business in the Fall of 2015.

Plaintiffs filed suit on March 17, 2017, alleging, among other claims for relief, that defendants engaged in a conspiracy in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO") Sections 1962(c) and 1962(d). Plaintiffs averred that Todd Gearheart conducted this scheme through activities including perjury, money laundering, mail and wire fraud, and bankruptcy fraud, and further asserted that JDH was vicariously liable for his actions.

In an Order dated February 27, 2018, certain defendants' Motion to Dismiss[2] the Second Amended Complaint was granted in part and denied in part. *See* Dkt. No. 104. In relevant part, that Order dismissed Plaintiffs' RICO claims for relief against JDH on the grounds that Plaintiffs had not pled facts showing Todd Gearheart's conduct was of a kind he was hired to perform, and therefore Plaintiffs could not plead vicarious liability of JDH. The Order did not expressly grant Plaintiffs leave to amend those claims for relief. On April 2, 2018, Plaintiffs filed their TAC. The TAC contained new averments regarding JDH's role in the alleged RICO claims for relief, discussed below.

**LEGAL STANDARD**

**I. Rule 12(f) Motion to Strike**

Under Federal Rule of Civil Procedure 12(f) courts may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). A matter is immaterial if it has no essential or important relationship to the claim for relief pleaded.

---

[2] The moving defendants were JDH; Todd Gearheart; Ray Gearheart; Gearheart Ag Consulting, Inc.; and E&K Ag, LLC. Frank Dores joined their motion.

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). A matter is impertinent if it does not pertain, and is not necessary, to the issues in question in the case. *Id.* Motions under Rule 12(f) are generally disfavored. S*ee Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citing *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000)).

## II. Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." Id. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

# DISCUSSION

## I. Motion to Strike

JDH moves to strike Plaintiffs' new allegations pertaining to JDH from the civil RICO Counts 1 and 2 on the grounds that Plaintiffs were not expressly granted leave to amend these claims for relief, unlike several others, thus indicating they were dismissed with prejudice. The new content regarding JDH, however, is neither immaterial nor impertinent to the issues in this case. Given that motions under Rule 12(f) are disfavored, as well as that Rule 15(a)(2) requires that courts "freely give leave [to amend] when justice so requires," Plaintiffs' amended claims for relief will be considered on the merits and JDH's motion to strike is denied.

## II. Motion to Dismiss

JDH moves to dismiss Counts 1 and 2 on the grounds that Plaintiffs fail to state a claim for RICO liability against JDH. Plaintiffs contend they have plausibly alleged that JDH should be held vicariously liable for Todd Gearheart's actions under the doctrines of ratification, respondeat superior, and actual approval. They also argue in the alternative that their claim for relief for conspiracy to violate RICO under Section 1962(d) should survive.

### A. JDH's Vicarious Liability

#### 1. Ratification

JDH argues that the Ninth Circuit has not recognized the ratification doctrine as a basis for RICO liability, and interjecting the tort concept of ratification into a civil RICO claim based on criminal predicate acts would be inappropriate. While JDH is correct the Ninth Circuit has not expressly addressed the issue, other courts, including some in this district, have. *See, e.g.*, *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1409 (11th Cir. 1994), *modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229 (N.D. Cal. 2004); *William Elecs. Games, Inc. v. Barry*, No. 97 C 3743, 2000 WL 794578 (N.D. Ill. June 19, 2000). Given that this Circuit recognizes a defendant may be held vicariously liable where it benefits from its employee's RICO violations under an agency theory of liability, *see Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992), and ratification is a type of agency relationship,

*see France Telecom S.A. v. Marvell Semiconductor Inc.*, 82 F. Supp. 3d 987, 995 (N.D. Cal. 2015) (citing Rest. 3d Agency § 4.04 (2006)), JDH has not shown that Plaintiffs cannot raise a ratification theory of vicarious liability as a matter of law.

JDH also argues that even if a ratification theory may apply, Plaintiffs fail to state a plausible claim. In order to state a claim under a ratification theory, Plaintiffs "must allege facts showing that [JDH] ratified acts taken by [Todd Gearheart] by knowingly accepting the benefits of those acts." *Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 WL 5992123, at *7 (N.D. Cal. Dec. 4, 2017) (citing Rest. 3d Agency § 4.10). "Covering up the misdeeds of an agent can also constitute ratification." *Bowoto*, 312 F. Supp. 3d at 1247. "Where the acts by the agent were not within the scope of the agency relationship, if they are not disavowed by the principal, failure to disavow may constitute ratification." *Id.* at 1248.

Plaintiffs aver in the TAC that JDH "approved, ratified, and encouraged his continued participation in the scheme even after such time as the Gearhearts and [JDH] were fully informed of the facts giving rise to the claims of criminal misconduct." TAC ¶ 186. This statement is a legal conclusion, however, lacking the necessary factual support regarding JDH's knowledge of Todd Gearheart's criminal conduct to render it plausible. Nor do Plaintiffs aver any facts showing JDH covered up any misdeed by Todd Gearheart.

Plaintiffs also aver that even after they put JDH "on formal written notice that Todd Gearheart had engaged in an unlawful scheme" with certain parties, JDH

> did not reprimand Todd Gearheart, demote him, reduce his compensation, or institute any change at all in his responsibilities. Instead, [JDH] continued to entrust Todd Gearheart with the responsibility of managing [JDH's] relationship with [certain parties] without placing any restrictions on his discretion or scope of authority and without expressing any disapproval for Todd Gearheart's role in the scheme.

TAC ¶ 187. While Plaintiffs contend that this constitutes ratification by failure to disavow, the acts that Plaintiffs identify—i.e., managing customer relationships—were neither criminal acts, nor were they outside the scope of the agency relationship, and therefore JDH's failure to disavow them does not amount to "ratification." *See Bowoto*, 312 F. Supp. 3d at 1248 ("Where the acts by

the agent were *not* within the scope of the agency relationship, if they are not disavowed by the principal, failure to disavow may constitute ratification.") (emphasis added). Plaintiffs' additional averments similarly fail to provide factual support for JDH's knowledge or failure to disavow criminal acts outside the scope of the agency relationship, and for this reason, Plaintiffs' ratification theory fails as a matter of law.

### 2. Respondeat Superior

Plaintiffs reprise their argument that JDH should be held vicariously liable under the doctrine of respondeat superior. "In general, an employer will be vicariously liable based on the doctrine of respondeat superior if its employee's acts were committed within the course and scope of her employment." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n.*, 298 F.3d 768, 775–76 (9th Cir. 2002) (citing Rest. 2d Agency § 219 (1958)). Conduct is within the course and scope of employment if "(1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform." *Id.* at 776.

In the previous Order, Plaintiffs' respondeat superior theory was dismissed because they failed to allege that the criminal activities constituting Todd Gearheart's RICO predicate acts were of a kind that he was hired to perform. *See, e.g.*, *Oki*, 298 F.3d at 777 ("[C]onspiring to violate RICO was outside the course and scope of [the employee's] employment because it was not the kind of function [the company] hired her to perform."). In the TAC, Plaintiffs now aver that

> [t]he specific tortious and criminal acts by which Todd Gearheart helped to create, manage, and operate the Gearheart Distribution Channel are all of the same nature and character as his other regular daily business activities on behalf of J.D. Heiskell. In both, Todd Gearheart selects products and suppliers and distributors for those products; negotiates pricing and quantity terms; chooses product delivery dates and ports of entry; approves and transmits invoices and payments; and monitors competitive conditions and trends in the marketplace.

TAC ¶ 193. While Plaintiffs attempt to plead that Todd Gearheart's RICO predicate acts and duties as an employee were one and the same, they miss the mark. As discussed in the previous

Order, the activities described by Plaintiffs are indeed his duties as an employee, but they are not criminal acts, nor are they the activities that comprise the predicate acts that Plaintiffs allege in their RICO claims for relief. Instead, Plaintiffs' predicate acts involving Todd Gearheart include mail and wire fraud, perjury, bankruptcy fraud, and money laundering. Because Plaintiffs fail to show that Todd Gearheart's alleged predicate acts were of a kind he was hired to perform, JDH may not be held vicariously liable for his actions.[3]

### 3. Actual Approval

Plaintiffs' final theory supporting vicarious liability is that JDH gave prior approval of Todd Gearheart's acts and therefore should be held liable. This theory rests on agency principles, which require Plaintiffs to show (1) "a manifestation by the principal that the agent shall act for him," (2) acceptance by the agent, and (3) "an understanding between the parties that the principal is to be in control of the undertaking." *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 177 F. Supp. 3d 1183, 1190 n.2 (N.D. Cal. 2016). Plaintiffs do not attempt to plead these factors, but instead argue that their averments show JDH's prior knowledge and prior approval of Todd Gearheart's conduct.

Assuming that Plaintiffs could show Todd Gearheart was an agent of JDH, Plaintiffs' allegations nonetheless fail to allege knowledge of and actual approval or authorization of Todd Gearheart's actions. While Plaintiffs describe at length the close relationship between Todd Gearheart and JDH's Chief Executive Officer, Ryan Pellett, they do not allege that Pellett had actual knowledge of Todd Gearheart's allegedly criminal conduct, but instead claim "it strains credulity that Todd Gearheart or Ray Gearheart would withhold from Ryan Pellett any material information relating to J.D. Heiskell's business." TAC ¶ 191. Plaintiffs also allege that "on

---

[3] Plaintiffs cite *Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 784 (N.D. Cal. 2016) for the proposition that whether an employer may be held liable under a respondeat superior theory is a question of fact that cannot be resolved on a motion to dismiss. That case is inapposite because it did not involve a RICO claim, and it arose under California law. *See Freeney v. Bank of Am. Corp.*, No. CV 15-2376, 2015 WL 5897773, at *13 (C.D. Cal. Aug. 4, 2016) ("[V]icarious liability is treated differently under California law and RICO").

1 information and belief Todd Gearheart and Ray Gearheart did in fact actually keep J.D. Heiskell

2 fully informed at all times of their activities," but then go on to discuss only non-criminal business

3 dealings, such as Ray Gearheart's resignation or JDH's product supply. *Id.* ¶ 202. Again,

4 Plaintiffs fail to allege that JDH had actual knowledge of the activity comprising his RICO

5 predicate acts. Without such knowledge, no approval or authorization could have occurred.

### B. Section 1962(d) RICO Conspiracy

Plaintiffs contend in the alternative that they have plausibly pleaded that JDH conspired to violate Section 1962(c). Contrary to JDH's argument, it may be liable for conspiracy even if it has not committed the substantive offense, as Plaintiffs had plausibly pleaded the Section 1962(c) claim for relief against other defendants. *See Salinas v. United States*, 522 U.S. 52, 63 (1997) ("A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense."). Conspiracy, however, requires an agreement and intent to violate RICO, *see Oki*, 298 F.3d at 774, and for the reasons already discussed, Plaintiffs fail to plead facts supporting those necessary elements. As Plaintiffs have already attempted to amend their averments to cure the deficiencies noted in the previous Order but have failed to do so, and as any further opportunity to amend appears to be futile, dismissal is without further leave to amend.

### CONCLUSION

For the reasons set forth above, JDH's motion to dismiss is granted. Counts 1 and 2 against JDH are hereby dismissed with prejudice.

**IT IS SO ORDERED**.

Dated: 5/25/2018

_____
RICHARD SEEBORG
United States District Judge